UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.

KIMBERLY NICHOLS,

    Plaintiff,

vs.

HOMEPARTNERS TITLE
SERVICES, L.L.C., a Florida Limited
Liability Company,

                                             **Jury Trial Demanded**

    Defendant.
_____/

## COMPLAINT

The Plaintiff, Kimberly Nichols, by her undersigned attorney, makes the following Complaint against the Defendant, HomePartners Title Services, L.L.C.:

### Jurisdiction and Venue

1.    This action is brought to redress violations of the Family and Medical Leave Act of 1993 ("FMLA"), as amended, 29 U.S.C. § 2601 *et seq.* This court has jurisdiction of this action pursuant to 29 U.S.C. § 2617(2) and 28 U.S.C. § 1331.

2.    The Defendant resides in this district, the claims asserted in this action arose within this district, and the alleged statutory violation occurred in this district. Venue of this action is proper pursuant to 29 U.S.C. § 2617(2) and 28 U.S.C. § 1391.

### Parties

3.    The Plaintiff, Kimberly Nichols ("Nichols"), is and at all times relevant to this complaint was an adult citizen and resident of the State of Florida.

4. The Defendant, HomePartners Title Services, L.L.C., ("HomePartners"), is and at all times relevant to this complaint was a limited liability company organized and doing business pursuant to the laws of the State of Florida with a principal place of business in Broward County, Florida and offices in other Florida counties.

## General Allegations

5. Nichols was employed by HomePartners as a Business Development Specialist at the HomePartners' location in Palm Beach Gardens, Palm Beach County, Florida.

6. On or about May 5, 2020, Nichols requested a job-protected FMLA leave to care for her mother, who was suffering from late-stage brain cancer and was unable to care for herself or to engage in the activities of daily living without assistance.

7. Nichols made her FMLA leave request to HomePartners' CFO, Rick Mueller. Shortly after making that request, Nichols was contacted by HomeParters' president and managing member, Rose Sheehan, who told Nichols that HomePartners was not covered by the FMLA and that her request for a job-protected FMLA leave would therefore be denied.

8. Sheehan agreed to allow Nichols to take an unpaid furlough from work to care for her dying mother but advised Nichols that, while the state of Florida might pick up the cost of her insurance, HomePartners would not cover her group health insurance benefits while she was on leave.

9. Nichols took the offered furlough, during which she acted as the primary caregiver for her mother until her mother's death. During that time, Nichols also executed her duties pursuant to her mother's Durable Power of Attorney.

10. HomePartners stopped covering Nichols' group health insurance premiums during her furlough.

11. After her mother died on or about June 12, 2020, Nichols contacted Sheehan to discuss a date for her return to work. Sheehan advised Nichols that her accounts had been transferred to another Business Development Specialist and that Sheehan did not want to "upset the apple cart" by returning Nichols to her former position.

12. Sheehan advised Nichols that her position had been eliminated but that it might be possible to give her a position as a table signer at closings if she would work with the Business Development Specialist who took her former accounts in order to bring him up to speed by providing information that was relevant to servicing those accounts.

13. Nichols returned to work in accordance with Sheehan's offer so that she could maintain her insurance benefit. She was paid substantially less compensation in her table signer position than she had earned in her Business Development Specialist position, both because the base pay was substantially lower and because she had no opportunity as a table signer to earn commissions. Nichols therefore suffered a substantial loss of income due to HomePartners' failure to return her to her former position with her former rate of compensation.

14. During the first several weeks of her employment in the position of table signer, Nichols faithfully worked with the Business Development Specialist who took her former accounts to give him the information he needed to service those accounts.

15. On or about February 1, 2021, after HomePartners received the benefit of Nichols' coaching of the Business Development Specialist who took her accounts, and just

weeks after hiring Nichols for the position of table signer, HomePartners terminated the employment of Nichols.

## FMLA Eligibility

16.     At all times relevant to this complaint, HomePartners was Nichols' primary employer. Other Florida entities were joint employers of Nichols, including The Keyes Company, Illustrated Properties, LLC, Capital Partners Mortgage, and HomePartners Title, Inc.

17.     The Keyes Company, Illustrated Properties, LLC, Capital Partners Mortgage, and HomePartners Title, Inc. each maintain business locations and employ workers within 75 miles of Nichols' work location at HomePartners in Palm Beach Gardens, Florida.

18.     Illustrated Properties, LLC is an Authorized Member of HomePartners. The website advertising of Illustrated Properties, LLC references HomePartners and makes no distinction between Illustrated Properties and HomePartners.

19.     Illustrated Properties, LLC is a 49% owner of Capital Partners Mortgage. Illustrated Properties, LLC has an indirect 50% ownership interest in The Keyes Company.

20.     Timothy Pappas is an Authorized Member of Illustrated Properties, LLC. He is also a director and the vice president/secretary/treasurer of HomePartners Title, Inc. In addition, he is CEO of The Keyes Company, an entity that partners with HomePartners to make real estate sales.

21.     Employees of The Keyes Company and Illustrated Properties, Inc. receive financial incentives and to keep all business within the affiliated companies that include Capital Partners Mortgage and HomePartners.

22. HomePartners, HomePartners Title Inc., The Keyes Company, Illustrated Properties, LLC, and Capital Partners Mortgage exercised common control of Nichols and were not completely disassociated with respect to Nichols' employment.

23. During the course of her employment, Nichols' work and working conditions were controlled and directed by managers of The Keyes Company, Illustrated Properties, LLC., Capital Partners Mortgage, and HomePartners.

24. During the course of her employment, Ms. Nichols regularly performed services at different times during the workweek for the benefit of The Keys Company, Illustrated Properties, LLC, Capital Partners Mortgage, and HomePartners.

25. For a significant time during her employment by Home Partners, Nichols worked in The Keyes Company office in Palm Beach Gardens.

26. For a significant time during her employment by Home Partners, Nichols worked in the offices of Illustrated Properties, LLC.

27. During the course of her employment, team meetings frequently included employees of The Keys Company, Illustrated Properties, LLC, and HomePartners.

28. HomePartners, either individually or in combination with the joint employers identified above, had 50 or more employees on each working day during each of 20 or more workweeks during calendar year 2019 or 2020.

29. At all times relevant to this Complaint, HomePartners, either individually or in combination with the joint employers identified above, had at least 50 employees working within 75 miles of the worksite where Nichols was employed.

30. At all times relevant to this complaint, HomePartners was an "employer" as that term is defined in the FMLA, 29 U.S.C. § 2611(4).

31. Nichols was employed by HomePartners for more than 12 months and worked for more than 1,250 hours of service within the 12 months prior to the date on which she requested an FMLA leave.

32. At all times relevant to this complaint, Nichols was an "eligible employee" as that term is defined in the FMLA, 29 U.S.C. § 2611(2).

33. Nichols was entitled to FMLA leave pursuant to 29 U.S.C. § 2612(a)(1)(C) to care for her mother who had a serious health condition.

34. Nichols provided timely notice of her need for a leave by giving notice to HomePartners as soon as was practicable after determining that her mother's rapidly deteriorating condition and need for immediate care made it impossible for Nichols to continue working while providing the care that her mother required.

35. Nichols provided HomePartners with sufficient information to make HomePartners aware of her need for an FMLA-qualifying leave because of her mother's inability to perform her daily activities without assistance. At no time did HomePartners request additional information from Nichols about her need for a leave or its anticipated duration.

## First Claim: FMLA Interference

36. Nichols realleges and incorporates paragraphs 1 to 35 of this Complaint.

37. Nichols was eligible for an FMLA-protected leave.

38. Nichols gave HomePartners notice of her intent to take a leave that was subject to the protections of the FMLA.

39. HomePartners failed to give Nichols the job-protected FMLA leave to which she was entitled.

40. HomePartners denied Nichols the benefit of an FMLA leave by failing to maintain her benefits during the furlough that it granted her instead of an FMLA leave.

41. HomePartners denied Nichols the benefit of an FMLA leave by failing to reinstate her to the position (or an equivalent position) that she held before she took a furlough to care for her seriously ill mother.

42. HomePartners denied Nichols the benefit of an FMLA leave by employing her in a position with substantially less pay after she took a furlough to care for her seriously ill mother.

43. HomePartners' interference with Nichols' FMLA rights was willful and in reckless disregard of the law.

44. As a direct, proximate, and substantial result of the interference with Nichols' rights under the FMLA, Nichols suffered harm, including but not limited to a loss of wages and benefits.

## Second Claim: FMLA Retaliation

45. Nichols realleges and incorporates paragraphs 1 to 35 of this Complaint.

46. Nichols was eligible for an FMLA-protected leave.

47. Nichols engaged in activity protected by the FMLA by giving HomePartners notice of her intent to take a leave that was subject to the protections of the FMLA.

48. HomePartners knew that Nichols had engaged in activity protected by the FMLA.

49. HomePartners terminated Nichols' employment because she engaged in activity protected by the FMLA.

50. By terminating Nichols' employment, HomePartners discriminated against Nichols in violation of 29 U.S.C. § 2615(a)(2).

51. HomePartners' discriminatory conduct was willful and intentional.

52. As a direct, proximate, and substantial result of the above-described discrimination, Nichols suffered harm, including but not limited to a loss of wages and benefits.

## Relief Requested

WHEREFORE, Plaintiff Kimberly Nichols requests judgment against Defendant HomePartners Title Services, L.L.C. for:

a. lost wages, the value of lost benefits, and other monetary losses in amounts to be proved at trial;

b. interest;

c. liquidated damages equal to the sum of the monetary losses and the interest requested above;

d. reinstatement or an award of future wage loss and such other equitable or injunctive relief as the court deems just;

e. an award of reasonable attorney's fees and the costs of this action pursuant to 29 U.S.C. § 2617(a)(3); and

f. such further relief as is just.

## Jury Demand

PLAINTIFF DEMANDS A TRIAL BY JURY.

Dated:  April 7, 2021

Respectfully submitted,

***/s/ Robert S. Norell, Esq.***
Robert S. Norell, Esq.
Fla. Bar No. 996777
E-Mail: rob@floridawagelaw.com
**ROBERT S. NORELL, P.A.**
300 NW 70th Avenue
Suite 305
Plantation, Florida 33317
Telephone: (954) 617-6017
Facsimile: (954) 617-6018
*Counsel for Plaintiff*

9